# JANUARY TERM, 1895.

## CHARLESTON.

KESTER *et al. v.* LYON *et al.*

Submitted September 12, 1894—Decided January 19, 1895.

1. COMMISSIONS—EXECUTOR
   Commissions to an executor on uncollectible debts ought not to be allowed. If entitled to anything for service as to them, it must be specific compensation.

2. COMMISSIONER'S REPORT—EXCEPTIONS.
   Exceptions to a report of a commissioner in chancery must point out the particular errors with reasonable certainty, so as to direct the mind of the court to them. Where exceptions are taken to certain parts of a report, the others not excepted to are admitted to be correct, both as regards the legal principles and the evidence on which they are based.

3. COMMISSIONER'S REPORT—EXCEPTIONS—ADULT PARTIES.
   If a report is not excepted to it is taken to be correct as to adult parties and will not be examined by either the lower or appellate court, and no advantage of any error therein can be taken, unless it be error apparent on the face of the report; but such an error can be taken advantage of in either court at the hearing, without exceptions.

4. COMMISSIONER'S REPORT—EXCEPTIONS—PLEADINGS AND EXHIBITS.
   To show such error on the face of a report, in the absence of such exceptions as bring before the court the evidence before the commissioner, recourse may be had to the pleadings and exhibits therewith, provided it be impossible that the alleged error could have been affected by extrinsic evidence.

5. COMMISSIONERS' REPORT—CHANCERY PRACTICE.
   If such report be excepted to within the ten days after completion during which it lies in the commissioner's office for examination, the commissioner must return the exceptions, with such remarks thereon as he thinks proper, and the evidence relating to the exceptions, and such evidence will be considered on the hearing of such exceptions; but, if no exceptions be filed within those ten days, the evidence on which the Commissioner acted is

| | |
|---|---|
| 40 | 161 |
| 40 | 559 |
| 40 | 622 |
| 40 | 161 |
| 42 | 307 |
| 42 | 635 |
| 42 | 667 |
| 40 | 161 |
| 43 | 298 |
| 40 | 161 |
| 44 | 563 |
| 40 | 161 |
| d46 | 750 |
| 40 | 161 |
| 47 | 449 |
| 40 | 161 |
| 48 | 493 |
| 40 | 161 |
| f49 | 150 |
| 49 | 660 |
| 40 | 161 |
| 54 | 643 |
| 40 | 161 |
| 57 | 61 |
| e57 | 62 |
| 40 | 161 |
| 61 | 524 |
| 40 | 161 |
| 65 | 621 |

not required to be returned by him, and forms no part of the report, and will not be considered on the hearing of any exceptions that may be afterwards taken to the report, unless made a part of the report by the report itself, or unless it be brought up by order of the court. (But see Acts, 1895, c. 8).

6. CHANCERY PLEADING—EXHIBITS.
    Where a bill or other chancery pleading exhibits a document, the document is a part of such bill or pleading as fully as if incorporated therein.

JOHN BASSELL for appellant, cited 23 Gratt. 674; 11 W. Va. 399, 412; 6 W. Va. 417.

W. SCOTT for appellees, cited 11 W. Va. 411; 2 Munf. 242; 1 Munf. 150; 3 Munf. 198; 4 Minor, part 2, 1235; Code, c. 87, s. 6; 4 Minor, part 2, top pages 1374-1376; 3 Wait's Actions and Defenses, 263; 9 Bush (Ky.) 19; 57 Pa. St. 46; 4 Minor, part 2, top page 1377; 3 Wait, 262; 2 Worner 706-711.

BRANNON, JUDGE:

This is an appeal taken by James M. Lyon from a decree of the Circuit Court of Harrison County in a suit brought by Celia M. Kester and Samuel O. Kester, her husband, against Lyon, to compel a settlement of his accounts as executor of Cyrus Ross, deceased, and to surcharge and falsify certain settlements which he had made before a commissioner of the County Court. One item of complaint by the appellant against the decree is that it disallows and refuses to Lyon three thousand, one hundred and sixty five dollars and forty eight cents, which had been allowed him in *ex parte* settlements as commission on insolvent uncollectible debts belonging to the estate. The executor was allowed commissions, and no complaint is made to the percentage of commission.

We can not sustain the claim for a commission on uncollectible debts. The statute bearing on the subject is that the fiduciary shall be allowed "any reasonable expenses incurred by him as such; and also, except in cases in which it is otherwise provided, a reasonable compensation in the form of a commission on receipts or otherwise." Code, c. 87, s. 17. The usual mode of compensation to the fiduciary for

service is by a commission on receipts, but where that affords no basis, some other process is allowable, but generally a *per centum*, greater or less, on receipts will answer all purposes. If a small commission is not just, the commissioner or probate court can increase it. *Estill* v. *McClintic*, 11 W. Va. 399. There are instances where it has been allowed on disbursements. *Boyd* v. *Oglesby*, 23 Gratt. 674. But how insolvent assets can give any basis or measure for commission we can not see. I have not found any instance of its application. No money from them has ever come to the hands of the fiduciary. It would be a dangerous precedent to adopt. If the fiduciary gets commission on debts solvent or insolvent what interest has he to use energy to collect them? This estate was a large one. It had many debts outstanding, and thousands of dollars were uncollectible. The executor gives evidence that he spent much time and effort in actual litigation, and otherwise by personal and diligent service, to realize these assets, and he says his commission on receipts is utterly inadequate compensation. Likely it is. My observation has been that the usual five *per cent.* on receipts, in cases of estates of size and complication, is too small a compensation for the labor and responsibility; but the executor is not to be compensated on the basis of percentage of uncollectible debts. If he rendered service as to them demanding compensation he should have rendered specific charges for specific services. We should be reluctant to overrule the action of a county or circuit court allowing a certain commission, rather than a lower or higher one, but not when the basis of allowance is unheard of and dangerous, and affords no just gauge. The commissioner and Circuit Court properly refused to allow this commission.

Another complaint against the decree is that it charges the executor with interest on moneys in his hands to an amount greater than the interest actually received by him. He says in his evidence, what is no doubt true, that of the large amount of money in his hands a good deal was often idle; that he had to keep on hand a considerable amount to meet current expenses of litigation; that litigation between two contesting wills lasted from 1873 to 1888, and in these

many years it was difficult, and at times impracticable, to find borrowers; that loans to cattle graziers would be made in the spring, and return in the fall, and for a time lie idle. He reported interest received by him to the large sum of four thousand, seven hundred and fifty three dollars and twenty eight cents, a circumstance attesting in favor of his energy in making loans. The amount of interest charged against him exceeded what he received by four thousand, four hundred and three dollars and nineteen cents. He received some loans in excess of lawful rate, which excess was not debited to him; but deducting that, the excess of charge of interest over all receipts was three thousand, two hundred and ninety six dollars and eighty four cents. Doubtless there is some hardship on the executor herein, but the case of *Granbery* v. *Granbery*, 1 Wash. (Va.) 249, reviewed and approved in *Burwell* v. *Anderson*, 3 Leigh 384, will not allow us to depart from the principle carried out by this decree of charging interest on balances of money in the executor's hands at the close of each year of his executorship covered by the account.

Another complaint by appellant is that he is twice charged with six hundred and forty seven dollars on account of a debt against Willis and Jarvis. The report on which the decree is based charges principal eight hundred and forty one dollars and seventy two cents, and interest two hundred and sixteen dollars and eighty eight cents, for "decree against Geo. E. Willis and William Jarvis in their suit against said executor." A former *ex parte* settlement charges the executor with " cash on note of Geo. E. Willis and Wm. Jarvis, six hundred and forty seven dollars." As the balance found in this settlement enters into the account on which the decree is based, if the debt charged to the executor in this account is the same as that for which the six hundred and forty seven dollars is charged, the executor is wronged to the extent of six hundred and forty seven dollars, with interest from October 20, 1887, to date of last account. Is it the same debt? To show that it is appellant's counsel appeals to a list of notes which went into the executor's hands, and we find it lists: (1) Note on G. E. Willis and Wm. Jarvis for

$400." This list is an exhibit with plaintiff's bill. The first question occurring is whether we can look to this list reciting this note to determine whether the debt for which the six hundred and forty seven dollars was charged and that charged in the commissioner's report, and entering into the decree, are the same. There were exceptions to the commissioner's report, but none as to this item of charge

This court has decided that exceptions to a commissioner's report have to be of the nature of a special demurrer, and must point out the alleged errors with reasonable certainty, so as to direct the mind of the court to them; and, when the party 'so excepts, the parts not excepted to are admitted to be correct, not only as regards the principles, but as relates to the evidence upon which they are based. *Reit* v. *Bennett*, 6 W. Va. 417; *Crislip* v. *Cain*, 19 W. Va. 438; *Chapman* v. *Railroad Co.*, 18 W. Va. 184, point 9; *Keck* v. *Allender*, 37 W. Va. 201 (16 S. E. Rep. 520) point 1; *Hutton* v. *Lockridge*, 22 W. Va. 159.

Suppose the error not excepted to be apparent on the face of the report, does the failure to except to it waive it, and preclude the party from availing himself of it on the hearing in the appellate court? Does it estop him, if he overlooks it and fails to except to it? The generality of the language of *Crislip* v. *Cain* would support the contention that it would, yet I think not. *Hutton* v. *Lockridge*, 22 W. Va. 176. If it would, this would debar Lyons from relief as to this item, as he did not except to it, while he did to others. Without exception no error of the report can be taken advantage of by adults, unless it be an error on the face of the report. *McCarty* v. *Chalfant*, 14 W. Va. 531; *Ward* v. *Ward*, 21 W. Va. 262; *Thompson* v. *Catlett*, 24 W. Va. 525.

There being no exception, then, to this item of the report, the appellant has no right to ask this Court to give him the benefit of it, unless it is to be deemed an error on the face of the report. What do we mean by the words "face of the report"? Does it mean face of the report alone? or can we include other parts of the record? It does not include depositions, or even documentary evidence, simply filed as such, and not exhibited with pleadings. The case of *Bank* v.

*Shirley,* 26 W. Va. 563, goes to the extent of including the pleadings as part of the report, as it holds that, though there be no exception to a report, and no error appears on the face of the report, yet, when taken in connection with the pleadings error in the report appears, the error will be corrected by the appellate court, it being impossible in such cases to be affected by extrinsic evidence. When we look at the mere face of the pleadings in this case, we are not helped, but we find exhibited with the bill a settlement made by Lyons with a commissioner, and as part of it a list of the estate's notes as stated above, and this list is part and parcel of the bill; for in chancery all exhibits with a bill or answer are parts of that bill or answer, and, generally, where one paper refers to another in a manner so as to identify it, that other paper is a part of the paper referring to it. *Gunn* v. *Railroad Co.,* 37 W. Va. 421 (16 S. E. Rep. 628) and citations in opinion; Bart. Ch. Prac. 345; *Bias* v. *Vickers,* 27 W. Va. 461, and cases cited; *Craig* v. *Sebrell,* 9 Gratt. 131; *Tracy* v. *Shumates,* 22 W. Va. 476. Thus we have before us this list of notes. Examine it, and it is found that it mentions a note of four hundred dollars on G. E. Willis and William Jarvis. Does it thence follow that this is the same debt charged in the commissioner's report as one arising from decree against George E. Willis and William Jarvis in their suit against said executor, with interest from the date thereof, eight hundred and forty one dollars and seventy two cents? By no means. There is no earmark of amount, date, or otherwise, save as to debtors. The evidence that is before us does not show it, and, if we could consider all the evidence before us on account of the points excepted to, it is not claimed there is any evidence to show it. It is a mere probability that it is the same, not a certainty, for there may have been two debts on same parties. Oral evidence before the commissioner, not brought up with his report, might have so shown him. Now, remember that *Bank* v. *Shirley, supra,* only allows us to look at pleadings, and find error in the report, when it is impossible that the result may be affected by any extrinsic evidence; and remember the numerous cases saying that, without exceptions, adult parties shall not impeach.

a report on grounds and in relation to matters which may be affected by extraneous matters. *Evans* v. *Shroyer*, 22 W. Va. 581; *Hyman* v. *Smith*, 10 W. Va. 299; *McCarty* v *Chalfant*, 14 W Va. 531; *Thompson* v. *Catlett*, 24 W. Va. 524. Others can be given. Under the rule of *stare decisis*, we can not depart from these decisions to meet what I regard as likely a hard case. Documents filed with brief of counsel render it practically certain that this double charge exists, but, as counsel admits, they are no part of the record.

Another complaint is for the first time made in brief of appellant's counsel, and is stated thus by it: "Another error against appellant, apparent upon the face of the report, or at least, a matter which is a great hardship upon him is this: Beginning with page 241, Commissioner Lynch makes a statement of the amount of assets in the hands of appellant as executor, and he commences by charging him with seventy three thousand, five hundred and eighty seven dollars and ninety six cents as of the 20th of October, 1888, and two thousand, two hundred dollars and sixty cents of interest collected up to that date. This is an error, as we will now show. On page 187 of record and the three following pages will be found the settlement made by Commissioner Denham of appellant's accounts, from which it will be seen that the commissioner charges appellant with principal, seventy two thousand, six hundred and fifty four dollars and twenty three cents; interest collected to October 20, 1888, two thousand, six hundred and forty nine dollars and seventy nine cents; and bank dividends, two hundred and sixty four dollars—making the total charges seventy five thousand, five hundred and sixty eight dollars and two cents. And on page 189 he gives total credits one thousand, nine hundred and eighty dollars and six cents, leaving a balance on cash account as of October 20, 1888, seventy three thousand, five hundred and eighty seven dollars and ninety six cents, which shows that all the interest up to that time collected or received by appellant was charged to him and settled as of that date. On page 283 of record will be found a settlement of appellant's accounts made by Commissioner Adams as of the 20th of March, 1890, in which appellant is charged with

this cash balance of seventy three thousand, five hundred and eighty seven dollars and ninety six cents, and with interest collected up to that date, two thousand, two hundred dollars and sixty cents, which is interest that had accumulated between October 20, 1888, and March 20, 1890; but Mr. Lynch erroneously charged this item back as having been received prior and up to October 20, 1888; and therefore when this item is carried into appellant's account he loses about two years' interest erroneously charged to him upon the sum of two thousand, two hundred dollars and sixty cents." But, turning to Adam's settlement, we find it stated thus: "1888, Oct. 20. To balance on cash account at settlement this date, $73,587.96; to interest collected, $2,200.60"—thus showing that Adams reported two thousand, two hundred dollars and sixty cents interest as collected up to October 20, 1888, not March 20, 1890. Lynch so found and reported in the report made the basis of the decree. Adams' report did not enter into this report.

But, if this were not so, this error does not appear on the face of the report, and Adams' report is called upon to manifest it, and that is no part of the pleading, but of a deposition; and as there was no exception to the report within the ten days during which it was in the commissioner's office, and never any exception as to this matter, the evidence, including this deposition, can not be looked into. *Arnold* v. *Slaughter*, 36 W. Va. 589 (15 S. E. Rep. 250); *Holt* v. *Holt*, 37 W. Va. 305 (16 S. E. Rep. 675); *Thompson* v. *Catlett*, 24 W. Va. 525.

The commissioner, if exceptions are filed within ten days, himself certifies the evidence touching the same, so as to make it manifest that he has sent it up, but he has certified none in this cause. *Arnold* v. *Slaughter*, 36 W. Va. 589 (15 S. E. Rep. 250).

Thus we are brought to the conclusion that we can not reverse the decree.

[NOTE BY BRANNON, JUDGE:—It is prudent to note the fact that after the above decision, ch. 8, Acts 1895, was passed making changes in the statute law referred to above, changes which may render useless many prior decisions and materially alter practice.]