# CHARLESTON.

WELCH LUMBER COMPANY V. PAGETON LUMBER COMPANY.

Submitted September 9, 1910.   Decided May 2, 1911.

1. COURTS—*Review—Jurisdictional Amount.*
    If the distributable share of a creditor, in a suit to wind up the affairs of a co-partnership, be less than the sum necessary to give jurisdiction, this Court will not entertain his appeal from a decree denying him such distributive share.   (p. 285).

2. APPEAL AND ERROR—*Review—Objections Not Raised Below.*
    Error, not apparent on the face of a commissioner's report, taken in connection with the pleadings, or which might be affected by extraneous evidence, will not be available as error in this Court, unless the report has been excepted to on that ground in the court below.   (p. 287).

Appeal from Circuit Court, McDowell County.

Bill by the Welch Lumber Company against the Pageton Lumber Company and others.   Judgment for plaintiff, and defendants the Graham Grocery Company and America Franklin appeal.

*Affirmed.*

*Ritz & Litz,* for appellants.

*T. F. Henritze* and *R. Anderson, Strother & Hughes,* for appellee.

MILLER, JUDGE:

This was a suit to wind up the business of the defendant B. R. Myers, trading as Pageton Lumber Company.   His debts, secured and general, and their priorities, were ascertained and decreed, and his assets marshalled and distributed in accordance with sundry reports of a commissioner, to whom the cause was referred.

The defendants, Graham Grocery Company, an execution creditor, and America Franklin, administratrix of Henry L. Franklin, deceased, the latter, in her petition, filed, asserting a lien on the funds in the hands of the special receiver, prior to all other creditors, have appealed.

The commissioner, by his several reports, in effect, at least, reported, and the court decreed, that the first lien on said funds was the deed or deeds of trust of the Welch Lumber Company; the second, the lien by execution, of the Graham Grocery Company. The commissioner also reported the execution of the Graham Grocery Company the first lien on all property of said Pageton Lumber Company, not covered by plaintiff's deeds of trust.

The lien of the Welch Lumber Company, so reported and decreed, was largely in excess of the net proceeds of the sale of lumber in the hands of the special receiver for distribution, and the court by the two decrees appealed from, the first of October 3, 1908, the other of July 8, 1909, though not in specific terms, yet in effect, confirmed the several reports of the commissioner, and directed that the balance of the money in the hands of the receiver, after payment of costs, expenses and counsel fees allowed, should be paid to plaintiff on account of its trust debt.

The commissioner in his final report, at the request of M. O. Litz, attorney for America Franklin, administratrix, also reported, "that there is due the estate of said Franklin from the Pageton Lumber Company, the sum of $732.80, as shown by the statement of said M. O. Litz, which is herewith returned." He did not, however, report this debt a lien, and it was not decreed a lien on the funds in the hands of the special receiver. Litz's statement, or evidence, before the commissioner, was purely hearsay, was objected to, as incompetent, which in fact it was. In her petition, or answer, the administratrix alleged said debt to be six hundred dollars, not seven hundred and thirty two dollars and eighty cents, as found by the commissioner. Litz says, that he had mislaid the papers at the time of preparing said petition, and that he estimated the amount.

The findings of the commissioner in his first and second reports, as to the liens and their priorities, were not excepted to, either by appellants or appellees. The decree of October 3, 1908, so finds, and decreed distribution to plaintiff of the larger portion of the funds in the hands of the special receiver. It appears from recitals in this decree, however, that a third report, by agreement of counsel, was made up by the commissioners in open court, and filed on the same day. It is to be in-

ferred from this decree and the arguments presented here that the agreement was, that the commissioner should make up the report on the pleadings and proofs already filed in the cause. He reported, however, that in order to ascertain the fact directed by the court to be inquired into and reported he had taken the deposition of Purcell, which he filed with his report. From this evidence he "finds and reports that the lumber taken over by the receiver in this cause was manufactured either from the logs mentioned in said deeds of trust in favor of Welch Lumber Company, or from timber mentioned in certain timber contracts referred to and embraced in said deeds of trust or some of them."

To this report and the reading of the deposition of Purcell thereon the decree recites there were exceptions indorsed on the report, but by whom the decree does not say. We find in the record, however, following the report, an exception signed by counsel for appellants, excepting thereto, "in so far as it attempts to report any property belonging to the Pageton Lumber Company, which went into the hands of receiver in this case as being covered or affected by the deeds of trust set up by the Welch Lumber Co., there being no evidence to justify such finding." The report shows also counsel for appellants was present at the taking of the deposition of Purcell, cross-examined the witness, and that no exceptions were noted to the testimony. Without passing upon this exception, the decree for the fourth time re-committed the cause to the commissioner for the purpose of taking proof, and directed him to report what property went into the hands of the special receiver; whether any property other than that covered by the deeds of trust went into his hands; whether the logs mentioned in the deeds of trust were converted into lumber after the execution thereof; whether the lumber manufactured from said logs went into his hands, and whether any lumber which went into the hands of the special receiver was sawed from timber or logs other than those mentioned in said deeds of trust.

In his fourth report, the commissioner reports his inability to ascertain all the facts called for in said decree. He refers to his report filed at a former term, in which he says he reported as nearly as he could, from the evidence, all property of the Pageton Lumber Company, and the value thereof, which had

been taken over by the special receiver. He reports that a few logs cut from the lands of R. L. Johnson were not covered by said deeds of trust, but that all other logs, except those, came from the Franklin land, and were covered by the deeds of trust; also that a portion of the lumber was manufactured after the execution of the deeds of trust, and that all the timber at the mill at the time the receiver was appointed went into his hands. He was unable to report what quantity of lumber was manufactured after the deeds of trust were executed, or what logs were cut and hauled in after that time, or what logs were on the skidways at that time, that were afterwards cut into lumber and went into the hands of the receiver; he was of the opinion that it would be impossible to get information that would be sufficiently definite to report these facts. Another fact reported is that the receiver took possession of three horses levied on, under executions in favor of the Graham Grocery Company, and Henritze & Henritze, as the property of the Pageton Lumber Company. He does not report whether these horses were or were not covered by the deeds of trust. This report was excepted to by no one.

By the final decree of July 8, 1909, the cause was brought on to be heard upon the several reports of said commissioner, and it recites that, "upon consideration whereof the court doth hereby confirm the said report  *  *  *  except as herein otherwise decreed". While "report" is used in the singular, we must interpret this decree as a confirmation of all the reports, treated as one. In effect it is so. It finally disposes of all the matters in controversy.

This is a very incomplete and unsatisfactory record. To arrive at correct conclusions and to do exact justice between the parties is next to impossible. We can only do the best we can, consistent with established rules of practice, and with due regard to the findings of the commissioner, and the several decrees of the court below thereon.

We will first dispose of the appeal of the Graham Grocery Company. The commissioner in his second report, reports the judgment of this company a first lien upon all the property of the defendant company, not embraced in said deeds of trust; in the fourth, that the horses levied on were turned over by the constable to the special receiver. The special receiver, in his

report, has accounted for the proceeds of the sale of two horses, one at forty dollars, the other at sixty dollars. What became of the other it is not shown in the record. From the description given by the constable of one of them it is not unlikely he has gone the way of all the earth. The decree filing this report of the special receiver, directs him to sell all the remaining property and assets of the Pageton Lumber Company. In his final report, confirmed by the decree of July 8, 1909, he reports the sale of no other horse. Presumptively all the property left in his hands had then been sold and disposed of, and so far as we are permitted to see from the record before us, there was no other property shown or reported, not subject to the first lien of the plaintiff company. The first item of disbursements with which the special receiver is credited in his report is: Paid Greenwalt, Justice, costs in the case of Graham Grocery Company against Pageton Lumber Company, $20.43. There may be other items not apparent properly chargeable against the proceeds of the sale of the horses levied on. If we should find, however, that the Graham Grocery Company was entitled to all the proceeds of the sale of these horses, its distributable share would be less than the sum necessary to give this Court jurisdiction of their appeal. *Wees* v. *Elbon*, 61 W. Va. 380, and cases cited.

Next what disposition shall we make of the appeal of America Franklin, administratrix? Her petition and answer claims a lien upon the funds in the hands of the special receiver. No seller's lien was specifically reserved in the contract exhibited with her petition. This contract, a deed under seal, granted and conveyed standing timber, with right to the purchaser to enter upon the land, and to occupy it, to the exclusion of the grantors, with mills, houses and other structures necessary to successfully operate the land for the timber thereon, and to store the manufactured lumber. One hundred dollars was paid down on the price, and an additional one hundred dollars was to have been paid, and so far as we know was paid, at the time the mill was set on the land, these sums to be deducted from the first one hundred thousand feet of lumber sawed, at the prices stipulated per thousand feet, to be determined by measurements by log rule at the small end of the log. Whether under this contract, or under the rules and principles applied in

*Wiggin* v. *Mankin,* 65 W. Va. 219, *Buskirk Bros.* v. *Peck,* 57 W. Va. 360, *Curtin* v. *Isaacsen,* 36 W. Va. 391, a lien existed, for the unpaid purchase money for the timber, asserted in appellants' petition, we need not, and do not decide, for in our view of the case, as presented, the decree below must be affirmed, on another ground.

That ground is, that Mrs. Franklin did not except to the reports of the commissioner, finding specifically, or in effect, that the plaintiff's deeds of trust constituted the first lien on the proceeds of the sale of the lumber and timber. Our decisions hold that where a commissioner's report is confirmed without exception this Court will not look into the evidence on which it was founded, or by which it might be effected, but will accept the findings of the commissioner as to all the facts depending on extrinsic evidence, as final and conclusive. *Long* v. *Willis,* 50 W. Va. 341; *Bank of Union* v. *Nickell,* 57 W. Va. 57, 62; *Gay* v. *Lockridge,* 43 W. Va. 267, and cases cited. It is quite true that an error apparent on the face of the report of a commissioner, taken in connection with the pleadings, which can not be affected by extraneous evidence, may be corrected, even in this Court, though not excepted to in the court below; but if it depends on extrinsic evidence, to be available as error here, the report must have been excepted to in the lower court. *Bank* v. *Shirley,* 26 W. Va. 563; *Bank* v. *Wilson,* 25 W. Va. 242; *Bank* v. *Nickell, supra; Haymond* v. *Murphy,* 65 W. Va. 616.

The result of these considerations is that the decree below must be affirmed.

*Affirmed.*